To this the defendant put in a general demurrer, on which it came before the'court.
Emmott for the defendant.
From the pleadings it will appear, that this is an action of assumpsit on two promissory notes, dated the 28th November, 1791. That *404 the defendant has pleaded the statute of limitations, to r ’ which a special plea has been filed, and on that a general demurrer. From the facts contained in the replication, it will be seen that the present question really is, how far the laws of Connecticut shall controul the operation of those of our own state. The contract is set forth, not only to have been made in Connecticut, but have been there made with a reference to the statutes there in force, and therefore, that the seventeen years limitation of the right to sue, formed'a part of the contract. There can be no hesitation in allowing, that the lex loci shall regulate, when we are to decide on the validity of a contract. Our statute of limitation is ; “All ■actions upon the case,” See. shall be commenced within six years after the cause of action accrues, excepting in those cases, contained in the proviso, and to be entitled to "the benefit of which, the plaintiff must shew that he comes within it: he should have gone further. In addition to the contract being made in Connecticut, he ought to have '«hewn, that the defendant continued to reside there till within the last six years. By the English statute the ab’Sence of the plaintiff takes the case out of it, with us it is .only that of the defendant : and therefore a suit may be brought here, when it could not there. This greater strictness, in denying the effect of the proviso, to absent plaim iffs, will make this court less inclined than even the English., to extend the saving of the statute. If, there¡fore, the statute would be a bar in England, a fortiori in •the State of New-York. In Robinson v. Bland, Black. 241, it is acknowledged that the statute of limitations may be pleaded to a foreign contract. The words of Mr. Blackstone, in that case are, “ The statute of limitations has “ been frequently allowed to operate on transactions “ abroad,” and in the same book, 257, Mr. Wedderbrune, in bis reply, admits this, but observes, that it runs only when both parties are in,England ; it does not affect the validity of the contract, but only the mode of recovering it: that is, it goes only to the remedy, and not to the right. This case, therefore, is inapplicable to the rules
*405 laid down, respecting the lex loci. The general one, as given by Lord Mansfield, ibid 258, is, that the law of the place where the the action is brought, is to be considered, in expounding and enforcing the contract. To the same effect is Duplein v. De Roven, 2 Vern, 540. In 2 Kaimes, 353. ed. 3. it is, on this subject said, “ Several questions “ arise from the different prescriptions established in dif- “ ferent countries. In our decisions upon this head, the “ case is commonly stated, as if the question were, whe- “ ther a foreign prescription, or that of our own country “ ought to be the criterion. This should never be made “ a question ; for, our own prescription must be the rule in “ every case that falls under it, and not the prescription of u any other country.” Admitting, therefore, fully the lex loci in expounding contracts, this is not a case of exposition, and does not, therefore, come within those authorities. Lodge v. Phelps, is a case in our favour. There the indorsee of a Connecticut note was allowed to proceed in his own name against the indorsor. This goes to shew that in all cases, where the question turns on the form of action, the law of the country, where the defendant is found, and not that where the contract was made, ought to prevail. Therefore, as it is not shewn that Tupper was out of the state till within six years, the suit cannot be maintained.
Goold contra. By the pleadings in the case, the truth of which stand confessed by the demurrer, the court will find that the defendant entered into the contract with a reference to the laws of Connecticut alone. It must have been intended then, that the rules of those laws should be exclusively resorted to, as the measure of justice between the parties. By the code, ordained as the law of Connecticut, obligations by specialty, and simple contract demands, are placed on the same footing. When therefore in that state a note of hand is taken, the creditor takes, and trie debtor gives the same security as would be created here by a specialty, or sealed obligation. As they are thus equal in their nature, the statute of limitations couples them together, and one uniform rule applies to both. If then the creditor *406 regards the continuance in his debtor of the duty to pay on every specialty which is taken, both parties imagine and agree, to at there is for seventeen years a continual obligation to satisfy the demand whenever called on. When the debtor executed these notes, he consented to be hound for payment of their several amounts, and so to continue for seventeen years; during that period, it is a further part of his agreement, that no presumption of payment shall be made. It is on this presumption of payment that every statute of limitations is founded. Therefore a promise to pay, as it rebuts the presumption, and shews the debt has not been paid, is allowed on all hands to take the case out of the statute. Nothing then can be more fairly inferred, than that the debtor has consented that these securities should create an obligation for seventeen years, and that, during' such time, the creditor might safely repose upon it. But a distinction is taken between the contract and the remedy; that the former may remain when the latter is lost. This is like taking from the shipwrecked his plank, with a profession that you do not mean to drown. When a man takes a security, he looks to the period for which bis debtor is obliged; thinks it shall last till then, and with a view to that it is taken. In Connecticut, the state has put notes and bonds on the same footing; but when the creditor comes to New-Yorlt, he is told, they consider the contracts of a different nature, and what he took as a specialty, shall be no more than a simple contract. What is this but to expound the lex loci contractus, according to the law of the lex fori, There is no decision exactly in point, no judicial determination but the following authorities, may, more or less, bear on the subject. This is a mere question of exposition, or how the parties contracted; in support of the lex loci contractus, 2 Fonb. 442, cites from Hub. Præl, tom ii. 1. 1, tit. 3, the passage át full length: there, after laying it down that the laws of a state are properly confined to transactions within its limits, Hu her us says, that in case of a conflictos legum, or varianpe of the laws of different countries, the laws of that where the contract is made, shall prevail with fhp exception of eases where, in the contract, a reference
*407 was had to the laws of another state. So, a marriage contract, made in France, shall be carried into effect in Eng- ■ land, according to the laws of France, though contrary to those of England, Feaubert v. Turst. Prec. Chan. 208. So in Alves v. Hodgson, 7 D. and E. 241, the court of King’s Bench refused to receive in evidence a note given in Jamaica, and not stamped according to the laws of that island. The same principle is acknowledged in Wright v. Nutt, 1 H. Black, 148, 9, where it was ruled, that the laws of Georgia, on a question of confiscation, were to be regarded in Westminster Hall as much as in Georgia, whatever might be the opinion of the court as to their policy. To the same effect may be cited Burrows v. Jemimo, 2 Stra. 732, 5 Vin. Abr. 511. Pl. 22, and in Jewson v. Reed Loft Rep. 138, Lord Mansfield said, a contract made in France, must be governed by the laws of France. A further authority, if the credit of the reporter will make it so, is from the same book, Crawford v. Witten, 154, where to an action of ' debt on a judgment of the Mayor’s Court of Calcutta, it was admitted, that the statute of limitations of the lex fori was not pleadable to foreign contracts. In that case, Mr. Justice Aston observed, that an action must be determined by the laws of the country in which the action accrued. But the next case which will be relied on, goes to the very remedy. It is that of Melan v. the Duke de Fitzjames,‡ 1 Bos. and Pul. 138, in which the court determined that jnan cannot be held to bail in England upon a contract to pay money, made in France, if by the laws, his person is not there liable to be restrained for the debt. And in order to prove that such was the case then in dispute, Pothier on obligations, and an affidavit of a counsellor of Paris were received as evidence. Here the remedy alone was the point in question; as the laws of the community where the debt arose, gave no lien on the body, it was disallowed in a case where, by the English code, the defendant was immediately Hable in his person, and might be held to special bail. The English bench, against the course of their own court, and against the laws of their own land, adopted those of France, in determining the'
*408 extent to which a debtor had pledged himself by his cngagement. Chief Justice Eyre, in giving his opinion, fuliy acj0pts t]le doctrine of the lex loci, and observes whatever would constitute a defence to the-action in France, would in Westminster hall. The reverse of this must be equally true, what is no defence in Paris, will be none in London. This, however, is now denied, and' while the lex loci contractus is admitted to create the contract,yet it is attempted to interpose the lex fori to protect the debtor, under the idea of the laws of the jurisdiction affecting the remedy, but not the contract. It is with due submission, imagined, that the defence set up by the opposite party attached on the contract, and made apart of it. It is of the utmost importance,-that a creditor should knpw, how long he may repose without its being presumed that he has been paid. In this state by taking a bond he would have intended to protect himself against this presumption for twenty years. To create an equal bar to presumption, such as an obligation would have inferred, must have been in the contemplation of the parties in Connecticut, because the law gives the security taken, the same advantages. If the maker and payee had, in Connecticut, been asked to expound their own contract, they would have said it is to . last and continue, firm and good against all presumption, for seventeen years. This then, attaches itself to, and is an integral part of the original contract, and therefore repels the bar growing out of a foreign jurisdiction; our statute of limitations, pleaded in bar. If the act did not operate on the contract, but merely suspended the remedy, it would be matter of abatement, not bar: because bar goes to the right not to the remedy, and the statute presumes payment made, therefore the judgment is in chief, and exhausts the debt, which becomes, as it were, dead. If the defendant meant to avail himself of our limitation act, he should have stated that .the notes were made with a reference to our laws, or at least should have gone on to set fortlr his own residence for six years last past. The court will refer to the pleadings, and see that they shew the lex loci contractus to have attached on the contract, and if the *409 residence of the defendant would affect the question, that circumstance should have been specially set forth to exonerate himfromthe operation of the laws of Connecticut. In the case of Phelps the court guarded against the conclusion that might be drawn against the lex loci contractus, and the courts of Connecticut have allowed the indorsor of a New-York note to prosecute in his own name ; giving thereby a remedy according to the lex loci, which would have been denied by the lex fori. Let us, for one moment, advert to the consequences of refusing to adopt the principles for which we contend : the laws of many states place simple contract debts on very different footings. One fifth of the money lent out, may he advanced on securities, like those on which the present action is grounded. These, after six years, are here presumed to be paid ; suppose the maker of a note removes to Connecticut, it will be in vain that he will say, by the laws of New-York the debt is barred ; the creditor will proceed and recover, when in the country where the whole transaction took place, he could never get a shilling. If this rule is to prevail, a creditor has only to . watch his passing debtor, arrest him in transitu, and attain payment long after every hope was, by law and the implied basis of the contract, totally gone. The court, therefore, will be cautious in making a decision, which, by rejecting the laws of a foreign state, in expounding the terms of a contract made there, becomes a necessary precedent to that state, in regulating the justice it is to measure out to the people of New-Yovk; which will, out of the limits of New-York, create a seventeen, instead of a six years limitation. One contract, may, by this means, have a dozen different interpretations : a debt is contracted in New-Hampshire ; the debtor comes here, and a six years quiescence discharges him ; he goes to Connecticut, and the debt revives ; according as the limitation is long or short, he by his own act settles the period of his creditor’s demand. It is -impossible to deny him this power, if the intention of the parties to the contract, and their resulting duties arising from a reference to the laws of the country, where that contract was made, are to be departed from: for instead of placing the *410 agreement on those resulting duties, and the basis conteníplated by the parties, it leaves that, and the duties to which they bind themselves to the sport and controul of the most contingent and capricious events, to the debtor’s locomtitive will, to the laws of any and every state or kingdom in which he may from time to time elect, from among all the nations of the earth, to take up his residence. Instead of one plain and uniform rule of construction, what an endless and perplexed confusion is suggested ? A suggestion which fixes nothing, but unsettles every thing; which renders every judgment insecure, and all suits every thing, but final. Such must be the consequence, though it may be attempted to shew the contrary, by refined distinctions between the remedy and the contract. There is another point of view in which this case may be presented. Among the nations, of Europe, a principle of comity has introduced a respect for each other’s laws and constitutions. Between the individual states which compose the Union, it is submitted, whether there is not a far more cogent reason to respect; even as a bond to preserve the federal government. There is a part of the constitution by which it is created, that “ no “ state shall pass any law impairing the obligations of con- “ tracts.” Does not this impose on the court an additional obligation to respect the laws of a sister state, in the exposition of a contract made there, than what arises from the mere comity of nations ? If the court will apply a principle drawn from the laws of their own state,. contrary to those of Connecticut, and not contemplated by the parties to the contract when it was made, do they not impair the force of obligations ? Besides, under this construction, full faith cannot be given to the judicial claims of the citizens of different states. This is mentioned merely as á feature in the constitution, to shew with how much circumspection the court ought to proceed. Suppose the case had arisen in a court of the United States; that a Connecticut creditor on a contract made there, had sued a New-York debtor, can it be supposed that there would have been the hesitation of a moment in adopting the lex loci contractus, the laws of Connecticut? *411 It is submitted whether an act of this state, which should abridge the period given by a foreign contract to a creditor, within which he should not be obliged to demand his debt; which should deny him the right to have recourse to his contract for any part of the time which was allowed by the laws of the state where it was made, it is submitted, I say, whether such an act would not, under the constitution, in the extensive sense of the terms, impair the obligation of the contract ?
Emrnot in reply. An objection has been raised against the force of our plea of the statute of limitations, from a clause, or part of a clause in the constitution of the general government; that no act shall be passed to impair the obligations of contracts. From the use made of this passage, it will follow that all statutes of limitation must invariably remain as they now are, and that no state can ever lengthen or shorten the period; because, that would be to impair the rights of others, in existing obligations. The meaning of the words are, that no state shall pass laws tending to impair the validity of contracts made in other states. The argument on the part of the plaintiff seems to suppose, that if the statute be allowed, the debt cannot be recovered, not so; the contract remains as it was ; all that is said by us is, that when attempted to be enforced against our laws, they interpose; but if it be carried back to Connecticut, then our statute, or a judgment under it, is of no avail. The security was taken, subject to any variations the state in which it was given, might make, and also to such as any other might adopt, where it should be put in suit. After the defendant has resided six years in this state, the statute attaches wherever the contract was made. For the words of the act are direct and positive, “ No action shall be commenced,” &c. without reference to the citizens of this or any other state. Under the letter and spirit of the act, the suit ought to be brought within six years, or the plaintiff should shew himself within the proviso. If the legislature choose to pass a law, the court cannot say they have no right to do so ; and it is to • be observed, that this statute is only a continuance of a ’ *412 former act. Allowing the defence does not deny the con- , .... .. ... on. the contrary it admits, but avoids. We say you have brought your suit here, and all that you can claim is the benefit of those laws to which you choose to resort. ■
JPcrcuriam delivered by Lewis, C. J. This is an action of assumpsit on two promissory notes made by the defendant to the plaintiff. The plea is actio non accredit infra sex arinos. To this the plaintiff replies, that the cause of action arose in the State of Connecticut; and was contracted with reference to rthe laws and customs of that state, and also that the period of limitation in that state for personal demands is seventen years. To which the defendant demurrs, and the plaintiff joins in demurrer.
The question arising on this state of the pleadings is, shall the lex loci contractus govern, or shall it not ?
It is a well settled rule, that contracts, with a few exceptions, are to be construed according to the laws of that country, in reference to which they are made. But it is equally well settled, that the remedy on them must be prosecuted according to the laws of that country, in which the remedy is sought. In the case of Duplien v- Dero-Ven, the cause of action arose in France ; it was on a judgment obtained in that country. The defendant pleaded the statute of limitations, and held a good bar to the action.
In Lodge v. Phelps, decided in October term, 1799, it was held that though promissory notes, made in Connecticut, were not there begociated, they might be negotiated here, and a suit maintained on them in the name of the indorsee. For that the principle of the lex loci, shall not affect the form of action, but shall have reference only to the nature and construction of the contracts, and its legal effect; not to the mode of enforcing it.
In a much earlier case, viz. that of Page and Cable, decided in this court, in April term, 1795, the precise question now before us, came under consideration. It was an action of assumpsit, on a promissory note made in Connecticut, by George Cable, to Jonathan Cable, the defendant, and by him indorsed, to David Page, the plain *413 tiff. The whole transaction took place in Connecticut. The plaintiff declared, first, under our statute, as indorsee —secondly, on the indorsement as a special agreement; setting forth the contract as originating in Connecticut, and the defendant as guaranteeing the payment by G. Ca'ble, and on his default engaging to pay for him.
The defendant pleaded the statute of limitations of this state, and the plaintiff demurred 5 alleging for cause, that no such statute existed in Connecticut, where the cause of action arose.
The court said, that the defendant having elected, to prosecute his suit in this state, he must pursue his remedy agreeable to our laws, and that our courts could not dispense with an adherence to the requisites of time, place, and manner, of commencing and prosecuting a suit, because the cause of action arose in another state. They conceived, that such adherence by no means impaired the ■obligation of the contract, and they gave judgment for the defendant. The correctness of those decisions, I feel no disposition to controvert, but conceiving the law on the point as settled, I am of opinion, judgment must be for the defendant, and with this opinion the Scotch and Dutch laws accord, as will appear from Erskin’s Institutes, vol. 2, 581-2 ; Kaimes’ Equity, vol. 2, 358 ; Huberi Prӕlectiones, vol. 2; book 1, Tit. 3, De Conflicto Legum, sec. 7.
Livingston, J. To this action, which is brought on certain promissory notes made in 1791, the defendant pleads the statute of limitations, or that he did not assume within six years.
The plaintiff" replies, that the notes were made in Connecticut, and with reference to the laws of that state, which sustain an action of this kind at any time within seventeen years after it shall accrue.
To this plea, the defendant demurs; so that no other ■question occurs than whether we are bound to enforce the limitation enacted by a statute of our own state, or allow the plaintiff the same time as he would have had before a tribunal in Connecticut ?
*414 Í11 the exposition of foreign contracts, courts take notice t^le laws of the state in which they are made, or manifest injustice would ensue. This is a dictate of common sense, and is become a principle of general law. In suits on
contracts made abroad, the parties in their pleadings
must observe the forms of the country where the action is depending ; but in deciding on the merits, the lex loci will be the rule. This distinction is found in the Roman and French law, and Emerigon speaks of it as adopted by all elementary writers.
16 Pouf tout ce qui concerne F ordre judiciaire (or form 11 of action,”) says that author, “ on doit suivre F visage <c du lieu ou F on plaide, mais pour cequi est de la deci- “ sion du fon, (or the merits) ou doit suivre, %n#regls <c generale, les loix du lieu ou le contract á été passé ex ‘ consuetudine ejus regionis in qua negotium gestum.” Another author on the same subject, holds nearly the same language. In his quie respiciunt litis deeisionem, servanda est consuetudo loci contractus. At in his, qum respiciunt litis ordinationem, attenditur consuetudo loci ubi causa agitur.
Emerigon also mentions an instance of a suit between two Englishmen in France, in which the plaintiff insisted .on proving by witnesses a parol contract for a loan exceeding one hundred livres. The defendant pleaded an ordinance resembling in some respects our “ act for the. “ prevention of frauds,” which required contracts of that amount to be in writing, and no other proof was to be received of it, but the instrument itself. The Parliament of Paris, however, determined that this being a valid contract in England, when it was made, the ordinance did not apply, and the plaintiffs recovered. “ II fut jugó, (says the author who reports this decision) parle parlement de Paris, que 1’ ordonnance n? avoit point lieu, d’autant qu’ elle va ad litis deeisionem., or to the git of the action.— Traité des assurances, ch. 4. sec. 8.
On a point of general law, where we have no rule to the contrary, ! cannot well err in conforming to one, which we find adopted by a foreign tribunal, heretofore among *415 the most distinguished in Europe, for the purity and wisi f • , • • ' , dom 01 its decisions : a necessary consequence ot the ' great learning, integrity, and independence of its judges. But the same rule I conceive prevails here. A note bearing a yearly interest of more than 7 per cent, if made abroad- and lawful there, may be recovered here, notwithstanding our statute against usury. I see no reason why the same respect should not be paid to the limitation acts of another state. Our statute against usury is quite as imperative in avoiding the security, as that which prescribes the time after which a suit shall not be brought ; yet courts have invented, or sanctioned several exceptions, not within tts provisions, to prevent a failure of justice. Thus, an acknowledgment of the debt has defeated its operation, or arrested its course. Why then not regard an exception c eated by the parties themselves, which must be presumed to be the case whenever they contract, with a view toa different limitation ? No violence is done to our law, by permitting them to establish for themselves, a rule different from that which would take place in case of their silence. If the defendant had agreed in writing not to avail himself of the statute of limitations of this state, if the suit were commenced in seventeeen years, a doubt can hardly be entertained of our giving effect to such an agreement. I perceive but little if any difference between a written contract of this kind, and a case in which the defendant must be presumed to have had in eye, the laws of his own state, and therefore, have virtually agreed to pay these potes, if sued within that period. To leave his state, therefore, prior to that time,'and then set up a defence in violation of his own engagement, and the understanding of the plaintiff, is an injustice which ought not be suffered, if, without a breach of duty, we can prevent it. It may be said, that if a party becomes a suitor with us, he must be bound by our laws. This is true, as it respects the form of action, or mode obtaining the remedy. Courts will and ought to adhere to their own forms, but in deciding on the merits of the demand, or defence, they do not derogate from their dignity, by enforcing the laws of a state, where *416 the contract- originated. The present defence is a perpetualbar to the action, and therefore involves in it, the me-pits, and not a mere question of form. If so, the laws of Connecticut should be our guide, and not those of our own state. In foro conscientise, the plaintiff’s case is aclearone. The defendant by his demurrer admits, that if he had not come to this state, the plaintiff might and ought to have recovered. -It would be matter of regret, if we were compelled to listen to as unjust a defence, considering the real understanding of those parties, as was ever obtruded up-en a court of justice. It would not be easy to assign a reason why an obligation incurred in one state should be cancelled by either of the parties Eying to another. We are not, in any opinion, under the necessity of establishing a principle or practice which may so easily be abused,, and must always be followed by great injustice. So long as we are at liberty to expound contracts lege loci, it is our duty to discountenance a defence, which in such country ■would not be allowed. When the defendant left Connecticut, the plaintiff had a good cause of action against him, which ought not to be defeated by his own act, in coming among us. I think, therefore, that as this defence has nothing to do with the form of action, but strikes at the plaintiff’s right to recover at all, we should apply to this case, the limitation act of Connecticut, and that as seventeen years have not run since these notes were made, the plaintiff should have judgment.

 This case ha» aafdifw^ob. veryekaraeda iva? aiSn when it was determined.